UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ROBBIN FORRISTALL,

                 Plaintiff,

v.                                                         Case No. 5:08-cv-52-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                 Defendant.
_____

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 13), and both parties have filed briefs outlining their respective positions. (Docs. 19 & 20.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On June 25, 2004, Plaintiff filed applications for a period of disability, disability insurance benefits,[1] and supplemental security income, alleging a disability onset date of January 1, 2000. (R. 59, 90.) Plaintiff's application was denied initially and upon reconsideration. (R. 25-34, 53-58.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 51-52.) The ALJ conducted Plaintiff's

---

[1] The ALJ denied disability insurance benefits based on the fact that Plaintiff's alleged disability onset date of June 25, 2004 postdates March 31, 2000, the date Plaintiff was last insured for disability insurance benefits. (R. 24.) Plaintiff does not appeal this determination. *See* Doc. 19.

administrative hearing on July 10, 2007. (R. 389-435.) The ALJ issued a decision partially unfavorable to Plaintiff on August 22, 2007. (R. 11-24.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 5-10.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] *See* 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, she is disabled.[12] Fourth, if a claimant's impairments do

---

[6] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] Id. § 404.1520(c).

[12] Id. § 404.1520(d).

not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] 20 C.F.R. § 404.1520(e).

[14] Id. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2.
> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

Id. (internal citations omitted).

[17] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker, 826 F.2d at 1003 ("The
(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## III. BACKGROUND

Plaintiff was forty four (44) years old at the time of the ALJ's decision on August 22, 2007. (R. 11-24, 90.) She has a tenth grade education, and has previous work experience as a waitress, bartender, and shipping/receiving clerk. (R. 76A-77, 80, 397.) Plaintiff contends that she has been unable to work since June 25, 2004,[23] due to foot problems, degenerative disc disease, and scoliosis. (R. 76, 90.) Plaintiff is insured for benefits through March 31, 2000. (R. 59.)

---

[18](...continued)
grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[20] Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[21] *See* id.

[22] *See* Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

[23] Although Plaintiff initially alleged January 1, 2000, as her disability onset date, she subsequently amended it to June 25, 2004 at the hearing before the ALJ on July 10, 2007. (R. 395.)

5

In the ALJ's review of the record, including Plaintiff's testimony, medical records from several health care providers, and testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff suffers from degenerative disc disease of the cervical and lumbar spine with cervicalgia and scoliosis, and a right toe injury. (R. 16-17.) While these impairments are severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 18.)

The ALJ then found that, prior to January 9, 2007, Plaintiff retained the RFC to perform sedentary work with restrictions. (R. 16, 18.) The ALJ limited Plaintiff to occasionally lifting and/or carrying ten pounds non-repetitively; standing or walking for six hours in an eight hour workday; sitting for two hours in an eight hour workday; and no repetitive bending. (R. 18.)

The ALJ further found that, beginning on January 9, 2007, Plaintiff retained the RFC to perform less than the full range of sedentary work. (R. 21.) The ALJ limited Plaintiff to occasionally lifting and/or carrying less than ten pounds; standing or walking with a cane for less than two hours in an eight hour workday; sitting for less than two hours in an eight hour workday, with alternating sitting and standing to relieve discomfort; pushing and pulling frequently—but not constantly; occasionally stooping, kneeling, and crouching; and avoiding concentrated exposure to hazards such as machinery and heights. (R. 21.) Accordingly, the ALJ concluded that, as of January 9,

2007, Plaintiff was unable to do sustained work activities in an ordinary work setting on a regular and continuing basis.

After finding that Plaintiff could not perform her past relevant work as a waitress, bartender, or shipping/receiving clerk since the alleged onset date of disability, the ALJ proceeded to step five of the sequential analysis. With respect to Plaintiff's residual functional capacity for the time period encompassing the alleged disability onset date through January 9, 2007, the ALJ consulted a vocational expert ("VE") to determine the extent of the erosion of the unskilled sedentary or light occupational base caused by the additional nonexertional limitations included in Plaintiff's RFC and found that Plaintiff would have been able to perform the requirements of representative unskilled sedentary occupations such as a ticket seller, a food and beverage order clerk, or a surveillance system monitor. Because the ALJ concluded that Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy, he found Plaintiff was not disabled from the alleged onset date of disability through January 9, 2007. (R. 23.)

However, with respect to Plaintiff's residual functional capacity from January 9, 2007 forward, the ALJ consulted Rule 201.25 of the Medical-Vocational Guidelines (the "grids")[24] and concluded that, beginning January 9, 2007, Plaintiff's ability to meet the demands of basic work related activities on a sustained basis was substantially compromised. As a result, the unskilled sedentary occupational base had been

---

[24] 20 C.F.R. § 404, subpt. P, app. 2.

significantly eroded to the extent that the ALJ found Plaintiff to be disabled as of January 9, 2007.

## IV. **DISCUSSION**

Plaintiff raises two issues in her appeal. First, Plaintiff argues that substantial evidence does not support the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") prior to January 9, 2007. Second, Plaintiff argues that the ALJ erred by failing to properly consider the severity and effects of Plaintiff's pain.

**A.** ***Substantial Evidence Supports the ALJ's Conclusion that Prior to January 9, 2007, Plaintiff Was Capable of Performing the Exertional Demands of Sedentary Work with Restrictions.***

The Plaintiff's first basis for challenging the ALJ's determination that Plaintiff retained the RFC to perform sedentary work with restrictions prior to January 2007, is that the ALJ's assessment is inconsistent with the objective evidence provided by Plaintiff's treating physicians and, therefore, the ALJ improperly failed to give proper weight to the opinion of a treating physician.

A treating physician's opinion on the nature and severity of a claimant's impairments is to be given controlling weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record.[25] The ALJ has the discretion to give less weight to a treating physician's opinion or report regarding the claimant's capacity to

---

[25] 20 C.F.R. § 404.1527(d)(2).

8

work if the opinion is wholly conclusory or unsupported by objective medical evidence.[26] A treating physician's conclusory statements are entitled to only such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[27]

As a threshold matter, the ALJ expressly relied on the medical opinions and observations of Dr. Christina Namvar, one of Plaintiff's treating physicians, to *support* her determination that Plaintiff's physical impairments became disabling as of January 9, 2007. Specifically, the ALJ pointed to Dr. Namvar's medical source statement dated January 9, 2007, in which she opined that Plaintiff was limited to carrying and/or lifting less than five pounds; rarely or never climbing, balancing, stooping, crouching, kneeling, or crawling; and sitting, standing or walking for less than one hour in an eight hour workday with an at-will sit/stand option. Dr. Namvar further opined that Plaintiff was limited in her ability to reach, handle, push and pull because Plaintiff had limited strength in her upper extremities for prolonged periods of time. (R. 380-81.)

However, Plaintiff also argues that the ALJ failed to give appropriate weight to Plaintiff's treating physicians *prior* to Dr. Namvar because "there is little to no difference in the objective evidence as it existed on January 9, 2007 and beforehand." In opposition, the Commissioner argues that the medical evidence prior to January 9, 2007 provides substantial evidentiary support for the disability onset date as determined by

---

[26] Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991) (ALJ had no obligation to defer to treating physician's report where physician conceded he was unsure of the accuracy of his findings).

[27] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); *see also* Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

9

the ALJ. In particular, the Commissioner contends that, even if the evidence of record supported an alternative onset date for Plaintiff's disability, the onset date as determined by the ALJ should be upheld because it is supported by substantial evidence.

With regard to Plaintiff's foot impairment, Plaintiff has not sought treatment with Dr. Mark Bornstein, her podiatrist, since August 2004 which, in combination with the fact that Plaintiff underwent a fairly conservative course of treatment for the pain associated with her right toe injury, tends to support the ALJ's conclusion that Plaintiff's right toe injury is not as disabling as alleged by Plaintiff.[28] The key inquiry then, is whether there is substantial evidence to support the ALJ's determination that Plaintiff's degenerative disc disease and scoliosis became disabling on January 9, 2007.

The Commissioner is not required to refute evidence that another onset date of disability could have been chosen,[29] nor is the Commissioner required to disprove any earlier onset date as long as the Commissioner's determination regarding the onset date is supported by substantial evidence.[30] In cases of slowly progressive

---

[28] (R. 19, 161-81); *see* 20 C.F.R. § 404.1529(c)(3)(v); Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

[29] Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989).

[30] Besaw v. Sec'y of Health & Hum. Servs., 966 F.2d 1028, 1030 (6th Cir. 1992); *see also* Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) ("The question before us is whether the onset date actually chosen is supported by substantial evidence, not whether another date could reasonably have been chosen.").

impairments, "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process."[31]

Contrary to Plaintiff's assertion that the ALJ's selection of January 9, 2007 as Plaintiff's disability onset date was "arbitrary," the ALJ articulated specific reasons for her decision. One of the reasons she gave to support her assessment was her reliance on the medical opinions and findings of Dr. Namvar. As noted above, Dr. Namvar prepared a medical source statement on behalf of Plaintiff dated January 9, 2007 in which she assesses Plaintiff to have severe limitations as a result of her degenerative disc disease and scoliosis. In April 2007, Dr. Namvar noted that Plaintiff's chronic pain and physical impairments "worsened recently." (R. 379.) Dr. Namvar subsequently prescribed a walker for Plaintiff to use "as needed" in June 2007 because Plaintiff had exacerbated back pain pursuant to several falls in the past month. (R. 378-79.)

The ALJ found further support in Plaintiff's own testimony for her assessment that Plaintiff's condition had substantially deteriorated in the months immediately preceding the July 2007 hearing. During the hearing before the ALJ, Plaintiff testified that her scoliosis condition had gotten significantly worse in the couple of months preceding the hearing. (R. 410.) Plaintiff further testified that she began using a walker just a few weeks before the hearing due to her increased problems with being imbalanced as a result of the rapidly increasing curvature in her spine. (R. 409.)

Another reason the ALJ gave to substantiate her selection of January 9, 2007 as Plaintiff's disability onset date was the lack of evidence to support the debilitating

---

[31] SSR 83-20.

11

limitations as described by the Plaintiff that would have precluded all work activity prior to that date. In reaching this conclusion, the ALJ noted that she afforded little weight to the medical opinion of Dr. David Willis.

With respect to the ALJ's decision to discount the opinion Dr. Willis, the Commissioner argues that the ALJ properly gave Dr. Willis' medical opinion less weight because it was inconsistent with his own treatment notes, the objective medical evidence as a whole, and Plaintiff's reported activities of daily living.

In a medical source statement prepared on behalf of Plaintiff in September 2006, Dr. Willis opined that Plaintiff was limited to sitting, standing, or walking zero hours in an eight hour work day; rarely or never climbing, balancing, stooping, crouching, kneeling, and/or crawling; rarely or never reaching, pushing and/or pulling; and lifting and/or carrying less than two pounds. (R. 255-56.) In sum, Dr. Willis' medical source statement described an individual who is essentially bedridden. Yet, as discussed more thoroughly below, Plaintiff's reported activities of daily living prior to January 2007 were not limited to the extent that one would expect from an individual totally disabled by her physical impairments.

The ALJ also gave less weight to Dr. Willis' medical source statement because it was inconsistent with Dr. Willis' own clinical findings. In August 2005, although Dr. Willis observed a decreased range of motion in Plaintiff's cervical spine and generalized tenderness in her back, he also found Plaintiff's motor strength in her upper extremities to be largely intact. (R. 263.) In September 2005, Dr. Willis' examination of Plaintiff revealed unimpaired motor strength in Plaintiff's upper extremities bilaterally. (R. 262.)

12

Therefore, Dr. Willis' benign clinical findings did not support his extreme opinion that Plaintiff was limited to rarely or never pushing, pulling, or reaching; and incapable of lifting more than two pounds.

Another reason why Dr. Willis' medical opinion was entitled to less weight was that it was not consistent with the objective medical evidence as a whole. Contrary to Dr. Willis' opinion that Plaintiff was essentially incapable of standing or walking for any extended period of time, Dr. Turner, another treating physician, examined Plaintiff in August 2004 and noted that Plaintiff "walk[ed] erect without a problem" and did not require an assistive device for ambulation.[32] (R. 206.) Plaintiff was treated at Samaritan Hospital in February 2006 secondary to a fall which exacerbated her symptoms and, while x-rays of Plaintiff's cervical spine taken during her visit to the hospital documented degenerative changes in Plaintiff's spine, the attending physician's examination of Plaintiff revealed that she was not experiencing any focal weakness or sensory loss as a result of the degenerative changes. (R. 235-36.) An MRI of Plaintiff's cervical spine performed in July 2006 revealed only mild spinal canal stenosis and only moderate stenosis of the lateral recesses bilaterally. (R. 258-59.) Plaintiff returned to the hospital the day after her MRI was performed complaining that her neck and back pain had gotten worse as a result of being "moved around" during her diagnostic testing the day before. (R. 348.) Although examination of Plaintiff revealed tenderness and decreased range of motion in her neck and back, she demonstrated normal motor strength and

---

[32] Dr. Turner also noted Plaintiff's complaints of numbness and grip loss in her upper extremities bilaterally. (R. 206.) However, these self-reported symptoms concerning functional limitations in Plaintiff's upper extremities are contradicted by Dr. Willis' observations a year later as noted above.

13

sensation and the examining physician noted that Plaintiff was capable of ambulating and performing her activities of daily living without assistance. (R. 350-51.)

Other than Dr. Bornstein, Dr. Willis, and Dr. Turner, the only other treating physician to provide an assessment of Plaintiff's functional limitations prior to January 2007 was Dr. Roderic Lacy who opined that Plaintiff should avoid repetitive lifting. (R. 360.) While the ALJ did not explicitly address Dr. Lacy's opinion in her written decision, the ALJ incorporated this limitation into Plaintiff's RFC by limiting Plaintiff to occasional and non-repetitive lifting or carrying. An ALJ is not required to summarize the entire record before him in his written decision where the unmentioned medical evidence supports the ALJ's conclusion.[33]

### B. *The ALJ Properly Considered the Severity and Effects of Plaintiff's Pain.*

Plaintiff also argues that the ALJ's assessment of her RFC prior to January 2007 is flawed because it is inconsistent with Plaintiff's reported functional limitations. Specifically, Plaintiff contends that the ALJ improperly discredited Plaintiff's testimony concerning her functional limitations arising from her physical impairments. As such, Plaintiff contends that the ALJ improperly evaluated Plaintiff's pain and its affect on her functional capacity.

---

[33] *See* Cunningham v. Shalala, 880 F. Supp. 537, 551 (N.D. Ill.1995) ("[I]t is not incumbent upon the [ALJ] to specifically comment upon every bit of evidence in the record."). *Cf.* Nyberg v. Comm'r of Soc. Sec., No. 05-16286, 2006 WL 1168815, at *3 (11th Cir. May 2, 2006) (ALJ erred in failing to mention a physician's opinion in his written decision where the opinion contradicted the ALJ's findings); Krueger v. Astrue, No. 2:06-cv-465-FtM-29SPC, 2008 WL 596780, at *11(M.D. Fla. Feb. 29, 2008) (ALJ's failure to address contradictory treating physician's opinion was reversible error).

In opposition, the Commissioner argues that the ALJ properly discredited Plaintiff's subjective complaints of pain. One of the reasons the ALJ gave for only partially crediting Plaintiff's pain testimony was that Plaintiff's own statements concerning her functional limitations were inconsistent.

In a Disability Report Plaintiff prepared in August 2004 at the request of the Commissioner, Plaintiff complained that due to her chronic back and neck pain she cannot walk or sit for more than fifteen minutes at a time. (R. 111.) She advised that she is unable to cook because she cannot stand for prolonged periods of time. (R. 112.) She reported that she needed assistance tying her shoes, had difficulty doing housework because she had difficulty bending, and she could not push the vacuum or fold laundry due to numbness in her hands. (R. 112.) She also advised that she had difficulty driving because she could not sit for long periods of time due to her back pain and, when her hands went numb, she was unable to hold the steering wheel. (R. 113.)

In a subsequent Disability Report, Plaintiff stated that her neck and back pain had gotten worse and she was unable to stand in the shower for very long, wash her hair, or shave. (R. 123.) She advised that she was unable to do any housework or laundry and could only drive for fifteen to twenty minutes because her back pain made it difficult to sit for prolonged periods of time. (R. 123.)

Yet, during her testimony before the ALJ in July 2007, Plaintiff testified that she was able to drive an hour in order to get to a doctor's appointment. (R. 416.) She also testified that she was able to wait in the doctor's waiting room for approximately two hours. (R. 416.) Plaintiff testified that she was capable of folding multiple loads of

laundry. (R. 416.) She also testified that she cooked approximately ten times a week, was able to do light housecleaning, and was able to care for her personal hygiene. (R. 397, 401-02, 416.)

Another reason why the ALJ discredited Plaintiff's pain testimony was that Plaintiff's activities of daily living prior to January 2007 were "not limited to the extent that one would expect from an individual totally disabled by pain." (R. 20.) For example, Plaintiff's medical records document that in April 2006 she took an extended vacation, which reportedly involved being on her feet and walking. (R. 320-21.) Plaintiff's self-reported activities of daily living, though not conclusive,[34] are inconsistent with those of a person who is bedridden.

In sum, the ALJ articulated specific reasons substantiating her determination of Plaintiff's disability onset date, and her reasons were supported by substantial evidence.

Finally, without any discussion or citation to authority, in the conclusion portion of her brief, Plaintiff offers the conclusory remark that "the ALJ relied upon vocational expert testimony that was not responsive to her hypothetical question or her ultimate findings regarding the Plaintiff's restrictions." However, because Plaintiff does not develop her argument any further, the Court is at a loss to discern exactly what portion of the vocational expert's testimony the Plaintiff is challenging as "non-responsive." However, to the extent that Plaintiff contends that the vocational expert's testimony is

---

[34] The crux of the Court's inquiry is whether Plaintiff is able to engage in gainful employment—not whether she engages in "sporadic or transitory activity." See Early v. Astrue, 481 F. Supp. 2d 1233, 1239 (N.D. Ala. 2007) (citing Smith v. Califano, 637 F.2d 968 (3d Cir. 1981); Easter v. Bowen, 498 F.2d 956 (8th Cir. 1974)).

not consistent with Plaintiff's assigned RFC, the argument lacks merit. The hypotheticals the ALJ presented to the vocational expert included all of the components of Plaintiff's assigned RFC. In response, the vocational expert provided examples of three types of jobs that an individual with such limitations would be capable of performing. Accordingly, in the absence of any additional development of the argument, the Court finds that the ALJ did not err in her use of the vocational expert's testimony.

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Commissioner consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 27, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel